# IN THE UNITED STATES DISTRICT COURT
# FOR EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT: https://facebook.com/jeff.kilgore.568 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:22-mj-246-SKL<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Thomas Bagwell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account https://facebook.com/jeff.kilgore.568 (hereinafter referred to as the "Target Account") that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2. I am a Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since January 2019. As such, I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations of, among other things,
Page 1 of 12

offenses enumerated in Title 18, United States Code, Section 922(g). I am currently assigned to the ATF Chattanooga Field Office. I have approximately seven years of federal law enforcement experience. Prior to starting my career in federal law enforcement, I served four years in the United States Marine Corps. I also obtained a Bachelor of Science degree with a major in criminal justice from Dalton State College. I am a graduate of the United States Customs and Border Protection Officer Basic Training (CBPOBT), Criminal Investigator Training Program (CITP), Basic Deputy United States Marshal (BDUSM) Academy, and the ATF National Academy's Special Agent Training (SABT) Program, all of which were completed at the Federal Law Enforcement Training Center (FLETC).

3. As a result of my training and experience in law enforcement, I am familiar with federal criminal laws regarding firearms, explosives, arson, and illegal controlled substances. I have conducted or participated in multiple investigations involving the criminal possession of firearms and distribution of illegal controlled substances. I have utilized traditional law enforcement techniques, such as surveillance, witness interviews, suspect interviews, execution of search warrants, evidence collection, and controlled purchases of evidence. I have gained insight regarding the habits, practices, methods, and general behavior of individuals engaged in criminal activity through interviewing numerous suspects, cooperating defendants, and confidential informants.

4. Based on my training and experience conducting or participating firearms and narcotics investigations, I know that it is common for individuals to use social media platforms, such as Facebook, to sell, trade, or transfer firearms to others. Individuals will often post photographs of a firearm or of themselves posing with a firearm for others to view and use Facebook Messenger to communicate with others when trying to sell, trade, or transfer a firearm.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of federal firearm offenses, including Title 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm, and Tile 18 U.S.C. § 922(d)(1), providing firearm(s) to a convicted felon, have been committed by Jeffery "Jeff" KILGORE (hereinafter KILGORE), utilizing the Facebook page affiliated with account: https://facebook.com/jeff.kilgore.568. There is also probable cause to believe that the search of information described in Attachment A will yield evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

1. The United States, including the ATF, is conducting a criminal investigation of Jeffrey KILGORE and others regarding possible violations of Title 18, United States Code, Sections 922(g)(1) and 922(d)(1). On August 31, 2022, your Affiant interviewed Brandon LAWSON, a multi-convicted felon, regarding a firearm recovered from a vehicle by the Tenth Judicial Drug and Violent Crime Task Force (hereinafter 10th DTF) following a traffic stop and probable cause search of the vehicle at 204 Grove Avenue Southwest Cleveland, Tennessee. LAWSON was previously advised of his Miranda rights by 10th DTF Agent Massengill. 10th DTF Agent Coffel was present while your Affiant questioned LAWSON.

2. LAWSON claimed that the firearm belonged to the driver, Dameion SWAFFORD (hereinafter SWAFFORD). LAWSON acknowledged that he was a convicted

felon and knew he could not possess a firearm. Your Affiant confronted LAWSON about his previous dealings with current federal defendant Christopher PUGH (hereinafter PUGH) and advised LAWSON that he knew PUGH was his previous source for narcotics. When asked whether he had ever sold PUGH a firearm, LAWSON claimed that he had sold him a black pistol but could not recall specific details about the firearm. PUGH is a convicted felon and was previously indicted in the Eastern District of Tennessee following a joint investigation conducted by the 10th DTF and ATF.

3. Your Affiant asked LAWSON whether he had any firearms at his residence, and LAWSON stated that he had two shotguns at the residence. LAWSON provided law enforcement written consent to search his residence located at 1506 South Ocoee Street Cleveland, Tennessee. LAWSON was advised prior to giving consent that law enforcement would not make any promises regarding state or federal prosecution in exchange for his cooperation. LAWSON was advised that those decisions were made by prosecutors.

4. LAWSON was transported to his residence by Agent Coffel and your Affiant. While at the residence, LAWSON advised your Affiant that a shotgun was located just inside the backdoor of the residence in the corner. He also stated that the other shotgun was possibly located on the front porch. 10th DTF Associate Director (AD) Bales subsequently recovered a loaded 20 gauge shotgun (Rossi, SA 20, 20 gauge shotgun, serial number S201220BR) on the front porch. Agent Coffel and your Affiant located the second loaded 12 gauge shotgun (Smith & Wesson, Model 3000, 12 gauge shotgun, serial number FB88642) inside the residence where LAWSON stated it would be.

5. Following the consent search, your Affiant spoke to LAWSON about both firearms and his source of fentanyl pills. He claimed that he had given the 20 gauge shotgun to

his mother. LAWSON claimed that he could not remember who he bought the shotgun from but that he had been convicted of a felony prior to purchasing the firearm. He claimed that his mother would be scared and would probably deny ownership of the firearm if questioned about it.

6. LAWSON stated that the 12 gauge shotgun was given to him temporarily by Jeffery KILGORE who wanted it back. LAWSON stated that KILGORE left the shotgun in a black Mercedes located at LAWSON's residence four days prior for LAWSON to use as protection. LAWSON then retrieved the firearm from the car and put it inside the residence. LAWSON stated that the firearm was already loaded when he placed it inside the residence. LAWSON stated that there were messages between he and KILGORE on LAWSON's Facebook Messenger regarding the firearm, which was later corroborated by Agent Kienlen who had received written consent from LAWSON to search his cellular phone.

7. Below are photographs of Facebook messages between LAWSON and the Target Account, taken during the consent search of LAWSON's phone.



8. On September 6, 2022, your Affiant reviewed KILGORE's public Facebook profile. His account was identified as "facebook.com/jeff.kilgore.568." While reviewing KILGORE's "friends," your Affiant observed an account listed as "Brandon Lawson." Your Affiant also observed that KILGORE's profile page displayed the same photograph of KILGORE and an unidentified female that is shown in the top left corner of the photographs mentioned above. Database queries indicated that KILGORE has at least one prior felony conviction in the State of Tennessee. Below is a screen capture of the profile photo of the Target Account:



9. Meta owns and operates Facebook, a free-access social networking website that can be accessed at https://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

Page 6 of 12

10. Meta asks Facebook users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

11. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

12. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

13. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their

whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

14. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

15. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

16. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

17. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

Page **8** of **12**

Case 1:22-mj-00246-SKL     Document 6     Filed 09/30/22     Page 8 of 16     PageID #: 19

18. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

19. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

20. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

21. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

22. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

23. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

24. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the

service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

25. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained

by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

26. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

28. Based on the foregoing, I request that the Court issue the proposed search warrant.

29. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the

Page **11** of **12**

Case 1:22-mj-00246-SKL   Document 6   Filed 09/30/22   Page 11 of 16   PageID #: 22

requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## REQUEST FOR SEALING

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Thomas Bagwell*
Thomas Bagwell
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to before me on September 30th, 2022.

HON. SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT: https://facebook.com/jeff.kilgore.568 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:22-mj- 246-SKL<br><br>**Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook account **https://facebook.com/jeff.kilgore.568** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT: https://facebook.com/jeff.kilgore.568 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:22-mj- 246 -SKL  **Filed Under Seal** |

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

    (a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

    (b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **August 1, 2022, to Present.**

    (c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **August 1, 2022, to**

Page **1** of **3**

**Present**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; and Wall postings;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user **August 1, 2022, to Present** including all Messenger activity, private messages, chat history, video and voice calling history;

Meta is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Sections 922(g)(1) and 922(d)(1) have been committed by the user of the Facebook page affiliated with user ID: https://facebook.com/jeff.kilgore.568, since ~~January~~ August 1, *see* 2022, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) the acquisition, possession, sale or transfer of firearms;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and

Case 1:22-mj-00246-SKL   Document 6   Filed 09/30/22   Page 15 of 16   PageID #: 26

events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).